You may be seated, and the clerk will call the next case, 316-170, Vanetta Pfeiffer v. Matthew Ports. Mr. Ports, you may proceed. If it pleases the Court, Counsel. Good morning. My name is Matthew Ports. I represent the appellate, Ms. Vanetta Pfeiffer in this case, and I am the contemnor. In the state of Illinois, the patient-therapist privilege is codified. It is very, very strong, and it is to be broken in only the rarest of circumstances. Now, it is not disputed that the Mental Health and Developmental Disabilities Confidentiality Act applies to the unconsented disclosure of all mental health records in cases like this. It is also not disputed that Ms. Pfeiffer does not consent to the release of her mental health records. Thus, the analysis here before this Court is the application of, I'll use the short name, the Mental Health Act, and whether or not the exclusion or the exception that the defense is asking for applies or not. The care we're discussing is care that the appellee has not seen. The trial court had the ability to review it. Your Honors have the right to review it. We were able to locate it when there was a mishap at the Peoria clerk's office. I was initially accused of not providing it to you to review, but it was misplaced. It was part of a record. It's been fixed. It is available to you. But what you will see, if you get to that point and think you need to look at those records, you will see records within the last 10 years prior to this incident, and this incident happened on August 21st of 2012, of some mental health care she received in the past. Now, 740 ILCS 110 is the Mental Health Act. Subsection 10 is Disclosure in Civil, Criminal, and Other Proceedings. This is a car accident case. This is the section of the Act that applies. Section 10A specifically allows, and I'll just simply read it, except as provided herein, a recipient and a therapist, on behalf of their recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications. I only state that because it is important that it is a codified, legislatively intended privilege. There are only a handful of privileges in the State of Illinois. Attorney at work products, attorney client, spousal, this one is one of them. This was created by the legislature in 1979, and it was intended to enforce the policy that the communications between a recipient and a mental health care provider are even more important than those between a recipient and their doctor. It takes extra special releases to get those records. That relationship is considered sacrosanct in that people who are dealing with loss of a loved one, drug addiction, a failed or failing marriage, are saying the most intimate things behind these doors in order to get better, which we want to encourage. That is why the privilege is so important, and again, it was enacted by the legislature. Section 10, and then the one exception that is cited by the defendant as an exception in this case, sets out the road map that a trial court or a reviewing court has to go through in order to determine whether or not the record should be disclosed to an opposing party. Now, the context of this case, the underlying matter that happened in August 2012, is a simple car accident case. What's not simple is that the plaintiff, Ms. Pfeiffer, was injured very badly. She was sitting in the center lane of a major thoroughfare in Peoria, Knoxville Avenue, sitting still when she was rear-ended from behind into rush hour oncoming traffic. That area, the speed limit is 45 miles an hour. It was a serious car collision. In that collision, she sustained some physical injuries, knee, arm. She sustained a physical injury to her brain. She had a traumatic brain injury. From that, she had some cognitive deficits, which we are claiming and continue to claim and feel we have a right to claim. They have to do with short-term memory loss and inability to multitask. She also, separately and differently, had claims for mental health. She was diagnosed with depression and anxiety through two of the witnesses who treated her for it over at OSF, Dr. Watt and Ms. Bresnahan. Now, Dr. Watt and Ms. Bresnahan treated her for both the cognitive deficits and the mental health deficits. In a situation like this, the reviewing court, well, let me get back to the fact that she initially started out with the idea that she felt that she was going to make a monetary claim for those mental health injuries, and upon request of her prior mental health records, had a chance to decide whether or not she wanted those disclosed or not, whether or not she wanted her intimate secrets from the past, those to be revealed. She decided she did not. She has that right. A plaintiff is the master of her complaint. She may withdraw claims at any time. She can withdraw her lost wages claim. She can dismiss count 205 complaint. That is a well-settled law in Illinois. I did not cite that law. I think it's fairly common. What I ultimately decided were more specific situations to this case. But back to the roadmap. In a situation like this where the undisclosed records are requested, the trial court has to go through a very specific analysis. Number one, first, and I'm reading straight from 10A1 of the statute itself, first a determination if the recipient introduced his mental condition as an element of his claim or defense. Now, again, as I said, we did, and then we withdrew it. Counsel in his response brief, frankly inexplicably in a way that does not make sense to me, says, no, you didn't. I say, I withdrew it. He says, no, you didn't. You didn't really withdraw. Of course I did. After that, then the court can certainly shape the trial to that withdrawal. But if you look at, specifically at the record, page 229, page 270, or 290, I'm sorry, 221 and 290 are two of the places, in addition to the report of proceedings, where I declared it again in open court as an officer of the court in argument. And 290 was a page that you had cited by the appellee in this case, which showed our interrogatory responses that stated we would be making a claim for loss of memory and inability to multitask along with ordinary Illinois pain and suffering, stated Illinois pain and suffering damages, but not be making any claims for psychotherapeutic harm. So it was withdrawn. Under that analysis, it ends. It's no longer an issue in the case. If she were diagnosed with depression or anxiety in the past, it would have no relevance in a case where I'm not making claims for depression or anxiety in the case of Barb. Or an aggravation thereof. Those issues are completely withdrawn. But, giving the devil its due, let's say I were making a claim for depression and anxiety. This exact analysis would still have to happen. First thing, has the recipient introduced her mental condition as an element or claim in the case? If so, then an in-camera review is required to occur. You'll notice in this case, in the November hearing, the trial court was ready to grant this motion without ever having seen a document. And if you read the report of proceedings, which is part of the transcript in this case, she said, well, I'm going to grant the motion. And quite incredulously, I said, whoa, we haven't even got to the meat of the Mental Health Act. After we had originally filed a motion that was emotionally compelled, it did not even include the Mental Health Act as a citation. In my response, I said, whoa, these are mental health records. This is not a small thing. We haven't even gone through the full analysis. The trial court then, after doing an in-camera review, must then find three things that are shown. Number one, that the records are relevant, probative, not duly prejudicial or inflammatory, and otherwise clearly admissible. That is a substantial hurdle. If that can be shown, then two, that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence. If all of that, if that's been established by opposing counsel or the judge in one way or the other, then we move on to another, that disclosure is more important to the interest of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm. So even if I were bringing a claim for depression and anxiety in this case, this roadmap still has to be, we still have to go through this exercise, and it's an important one. Again, it was set up by the legislature very specifically. Many of the circuits weighed in on the Mental Health Act in the 10, 12 years following its entry. In 2001, the Norskog case was the Illinois Supreme Court case that essentially put into words what several circuits agreed with, which was that, number one, the Mental Health Act is a What circuits? I'm sorry, the different, the third, I'm sorry, the districts. I apologize. State court, yeah. The different districts, absolutely. And a simple Westlaw search or in the old ways, shepherdizing, you'd see, I know the first had weighed in, the fifth had weighed in, the fourth had weighed in. But they used these actual words, and it was now put into a document by the Illinois Supreme Court. The Mental Health Act is a, quote, strong statement of importance of keeping mental health records confidential. And, quote, anyone seeking nonconsensual release of mental health records faces a formidable challenge. It is a privilege established by the legislature as an exception to the general rule that the public has the right to every person's evidence. And it's, at its strongest, as a privilege, it even can outweigh fairness. Now, in this case, as I've said multiple times, we have withdrawn. So there's a tension between the concept of fairness under the Supreme Court interpretation of the statute and substantial justice, which is the legislative language. Yes. Okay. So we've got that. But what else is there besides substantial justice as an exception? I don't, I'm sorry, I don't understand your question. Is there not a concept of relevance? Relevance is part of the first of the three prongs that is in Section 1, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible. So it is relevance, but it is another step. That determination gets all the way to admissibility, which is a huge hurdle. We get records in these cases all the time that aren't mental health records that are excluded on a regular basis the day before a trial, because through a motion in limine, they're determined not to be relevant whatsoever. It would cloud the jury's judgment. So it is my contention that the trial court failed to do this analysis. So there was no encampment. Well, eventually there was. What she did in the November order, she first, if you read the report of proceedings, she said, well, I'm granting it. And I said, well, can we do something to take a look at these things? And she said, okay, well, your other option is, if you would like to, you can submit them in camera. I chose to do that in hopes that she would look at them and say, what are we doing with this if he's not making a claim? She did take a look at them. We did a hearing in December. That order was eventually entered on January 4th, in which she granted the motion to compel in its entirety except for one sheet of paper. I mean, there's probably 40 or 50. I don't know the number. It's in that sealed packet that the court has. But she took one sheet out. But if you look at the appellee's briefs, his arguments, and even the briefs in this case, the Mental Health Act is sort of an afterthought. The last section of the appellee's brief is, oh, by the way, if we do get to the Mental Health Act, then we think we fall into exception number one. I think the Mental Health Act is where we start. You have to. These are mental health records that she does not want to have revealed. There is an analysis that needs to take place. Even if we were making the contention that we were bringing a claim for depression and anxiety, we'd still have to go through this, and it may be determined that they're too prejudicial or inflammatory or it hurts the therapist-recipient relationship. Thank you. So you're saying memory loss, which is still in there. I've claimed memory loss, and I've also claimed inability to multitask. Both of those. That's right. And under RETA, and ordinary pain and suffering. And under a RETA kit. Let's stay with mental health here. Sure. Does that have anything to do with mental health? It does not. These are cognitive deficits that were shown through taking tests by a psychotherapist, Dr. Watt and Ms. Bresnahan. The RETA case goes directly to this point, which is the next Supreme Court case in 2002, a very important case in which the Supreme Court reversed the appellate and trial courts, saying that they quoted the single dissenting justice when they signed on to her reasoning, which was a neurological injury is not synonymous with psychological damage, nor does a neurological injury directly implicate psychological damage. In both cases, we have physical injury to the brain. So you're saying this is neurological. It is. Okay. I mean, that's just simply what you're saying? It is. And you've got support through Supreme Court decisions that that's it? I do. Okay. I cited two other cases near the end that state, number one, the Santelli case, that a plaintiff always has the choice to withdraw certain claims so as to avoid disclosing those psychological records. And then in my reply, I noted the Crocker case, which is a case that says that this is a police officer bringing a case against the city for an employment issue in which they wanted his records. He decided he first was making a claim for emotional injuries. Then he said, you know what, I don't want to give those records up. The Northern District Court entered an order saying that's fine, but now you're limited in what you can do. And I think that's perfectly fair in this case in which I volunteered. Has that order been entered in this case, that type of order? Pardon me? Has that type of order been entered in this case? Oh, no. No. And initially in the request for relief by Appali, the second thing he said, number one, I want the records. If not, I want a limiting order for the court. But he abandoned that during argument. And he said, no, no, I just want the records. I just want the records. And then we never talked about it again. I mean, I think that is part. If I'm going to withdraw the claim. What prevents you from handing an order to the judge? The court ruled to hand over all those records. She simply would not acknowledge during the hearing that I had withdrawn the claims. I mean, his argument is that, no, you haven't withdrawn them. And one of them is you have to withdraw those witnesses. That's absolutely not true. Those doctors can absolutely talk, just like any motion to eliminate, can talk about the cognitive justice without going into the mental health aspects. And that happens every day on the day before trial. You have to advise your witnesses. You go forward with the trial. But that's absolutely what I wanted to happen, what I thought would happen. But instead, she ordered the release of all the records. And it simply did not accept my withdrawal of those claims. Thank you. Thank you, Mr. Forbes. Mr. Chen. Thank you, counsel. May it please the court. Adam Chanak for the Appellee. As we look at the case law on these issues, specifically the Supreme Court's decision in Norskog and the D.C. v. S.A. case, and also in the Santelli federal court case, which plaintiffs sided and relied on, all three of those cases warn that plaintiff patients should not be allowed to use the psychotherapist patient privilege in the federal case or in the mental health Illinois state case. They should not be allowed to use the act or the privilege as both a shield and a sword. And we see here that is exactly what this plaintiff is trying to do. And they start with it by using it as a sword, wanting to claim those things which they carve out as mental health and not mental health, and then as a shield to prevent production of records which would allow us to analyze the causal connection between the accident and her prior, the accident and her conditions, and the conditions at her prior care. And the point here is this, and I think it's part of the difficulty in relying on cases that are 16 and 15 years old respectively. Medical science keeps evolving while Loretta and the Norskog cases remain in a vacuum. And as medical science evolves, we see that these mental health issues are related to the physical injuries of the brain injury, the brain trauma. It's interesting that plaintiff's counsel stands up here and says, well, these are mental health and these aren't mental health. But as you read the discovery depositions of Dr. Watt and the psychotherapist Bresnahan, it's clear that the mental health and the cognitive issues are in fact interrelated in this closed head injury. And they make findings both related to cognition and the interacting depressive disorder. I think the diagnosis was adjustment reaction disorder with depressive features. They're intertwined. And on top of the treating physician, Dr. Watt, and on top of the treating psychotherapist, we have in this case the defense has disclosed an expert, a neuropsychologist who says that these things are relevant and are interrelated. Mr. Portz wants to rely on that Loretta case. And I think it does him a disservice, and I think it proves the point in this case. By my count, Loretta is distinguishable on at least six very important issues. In Loretta, the plaintiff's answers to interrogatories made no mention of mental health-type claims. The injuries they claimed there were that they had toes amputated, that there was disability, disfigurement, stroke, pain and suffering, kidney and cardiac problems. No mention of mental health damages at all. Contrast that with our case where in answer to interrogatory 11, plaintiffs specifically sought out and claimed mental health damages and interestingly denied any previous mental health injuries or treatment, which we now know is untrue. But that's a significant issue. And then point two in the RETA case, the defendant sought the mental health records after only written discovery and not before deposition. Remember, in RETA there was no mention of mental health claims in the written discovery. So without any basis for seeking out the mental health records, no claim by the plaintiff in written discovery, no claim by the plaintiff in deposition, the defendant in RETA sought out the mental health records. That's quite different and contrasting from our case where the defendant here requested the mental health records only after plaintiff made it abundantly clear in her written discovery and in her deposition that she was making mental health-type of claims. Okay, let's go back to how do you define mental health. Well, I... I mean, you know, we did have a card out here, an argument of cognitive mental health, okay? So, I mean, he withdrew depression and anxiety and that, which the layman would say, probably are mental health conditions. Well, as Bresnahan and Watt, and I think as my expert, my neuropsychologist, if allowed to testify, will tell you, is that they're not separate and apart. They're intertwined. And so that's the point is, how do we define mental health? And I don't think it's respectfully for me or for Mr. Forbes or the justices here to decide what is and isn't mental health. It's left to the medical experts. And in this case, Bresnahan and Dr. Watt and eventually my neuropsychologist, Dr. Denberg, will testify that those are intertwined and aren't easily separable. Plaintiff's counsel wants to say, well, it's easily separable, and look at Rita. But Rita's a different case. That's where they had a stroke and a separate physical injury. It was not a closed-head injury case. It's a separate and different case. And if you look at Rita, too, the... A lot of it was the same. It said that the plaintiff there had suffered from headaches, loss of memory, decline in comprehension, difficulties in performing daily activities, and changes in personality. Which the trial and appellate court said, well, they'd open the door. And so they were subject to disclosure. And the Supreme Court said, no, just because you answered the questions during the deposition that way, that you're not putting the mental condition at issue. So, I mean, I know you said, well, it's different here, because we made the request prior to the deposition. But I don't really see... Well, two things. In Rita's case, he was only answering questions, because he had never put it at issue in the answer center reference. Where here we had exactly the opposite scenario, where she listed mental health damages that she claimed in her interrogatories. So it wasn't simply just answering mean defense counsel's questions. She'd already put it at issue in her discovery responses. And what were those mental health, you said? Right. What were they? In her discovery, she claimed depression, anxiety. I think it was bouts of crying, loss of confidence, et cetera. But that was withdrawn. Is that correct or no? Well, so that's... I guess it's arguable whether it was withdrawn. Certainly, Chalkworth didn't think it was withdrawn. The plaintiff, the one sworn, and it's not sworn, I misspoke, the one document in which plaintiff attempts to withdraw the claims was the supplemental answers to defendants' supplemental interrogatories. And here is how plaintiff withdraws it. Quote, plaintiff continues to assert that she does not intend to claim specific mental health claims related to this cause of action. Okay. So where does that leave us exactly? That leaves us right where we are right now trying to decide which of those issues is or is not a mental health claim. As the court... You have these experts that are saying, you know, even the astrological sign might be affected. Okay. I mean, the bottom line is, your argument, do we take the Mental Health Confidentiality Act statute and just throw it away? Because all you have to do is get an expert to say, oh, all of this is intertwined. But I would respectfully disagree on two points. One, the act is still there to protect, and the judge, trial judge Gorman, did exactly what the red court says the act requires, which is a two-step process, one, of seeing whether or not the mental health was introduced, and two, if so, are the requirements of the act met, whether it's probative, relevant, not likely to be prejudicial, and a substantial justice requirement. So one, the act's not being thrown out. The trial judge still serves as the gatekeeper to ensure that the requirements of the act are being met. Two, it's not just me hiring an expert to come in and suggest that there's something more. Her own treating physicians are saying this. And that's one of the other important differences between the Reddit case and this one. In Reddit, there were no treating physicians disclosed as having opinions on mental health and relating them causally to the accident. And those witnesses weren't disclosed. In this case, plaintiff permanently disclosed both Dr. Watt and neuropsychotherapist Bresnahan as not only having treated and cared for this patient, but having opinions as to the injuries that she suffered as the causal relation of this accident. So it's not me hiring an expert to come in and say this. Her own treaters have said that these things are intertwined. So, again, we go back to who's in the best position to determine what is and what is not mental health, and who's in the best position to decide what's been withdrawn. All plaintiff, on the basis of the one document which is signed, not verified, not notarized, not certified in any way, says that they will withdraw the mental health complaints. Well, the neuropsychologist, Dr. Watt, is treating her for the whole gambit of her injuries in this case. Thank you. Not only the depressive features, the anxiety, the fear, the crying, the bouts of crying, the loss of short-term memory, the cognitive, all that's being treated by the neuropsychologist. Not some neurologist like in RETA. Not some other type of primary care physician. A neuropsychologist is providing the care and treatment for all of these issues. It's not as simply as taking the knife and carving out those which he wants and excluding the others. That's how plaintiff is using the act as both a sword and a shield, by trying to keep those which he wants while excluding everything else when it's not simply that clear. In RETA, did the plaintiff limit damages to pain and suffering, physical pain and suffering? That's right. And the complaint in this case, does it limit damages to pain and suffering? I cited it in my brief, and I don't remember offhand what the citation is, but I think it's much more broad than that, but I don't know that it specifically says mental health either. It's more broad than pain and suffering, but I don't know that it specifically mentions mental health in the language of the complaint. But, again, I'm not sure if that matters because, again, we come back to this waiver and what has been waived. Had plaintiff wanted to officially waive all of these, he needed to, had plaintiff wanted to withdraw these mental health issues, he needed to elicit some testimony from Bresnahan or Watt or produce his own expert saying that they are separate and distinct, that the cognitive can be disassociated from the mental health and depression claims. He needed to make some objections, maybe, in Watt and Bresnahan's depositions that we were inquiring about mental health treatment, which, of course, was not done. As you look at this idea that it's been waived, this is the one document where it was waived. Not certified, not verified, not notarized, and it says generally mental health. There is no specification as to specifically what has been waived and what would be allowed to go forward at trial. As I listened to Mr. Korn make his arguments today, it occurred to me that his arguments sounded more in the form of a motion to eliminate. We're not there yet. This is discovery. He's making arguments about motions to eliminate, and he even knows most of the time he gets them thrown out of motion to eliminate. And the point is this is a discovery motion. And we're entitled to see this information to determine whether or not her complaints now are causally related to the accident or her preexisting mental health. So I am absolutely certain, based on the facts of this case, that she has introduced her mental health. It does not appear that she's adequately withdrawn those claims. The expert testimony in the case, both the independent treaters and my eventual expert, demonstrate that mental health and cognitive are intertwined into the closed-head injury case, and I don't think we're in a position, either the justices or the attorneys, to decide what is and isn't mental health. We have to rely on Watt and Bresnahan, and they've shown that it's all intertwined. So unless the Court has any other questions, that's my presentation. Thank you, Mr. Shatter. Mr. Quartz. Thank you. I disagree with counsel very much on the interpretation of the testimony of Dr. Watt and Ms. Bresnahan. You can read the testimony for yourself. There are not questions that say, are they intertwined? It cannot be separated. Those weren't asked. It wasn't. And there is no waiver by their depositions going forward. They treated her for cognitive issues and mental health issues, and there's no way this doesn't have to do with her past mental health, which is what is privileged. Most certainly, those records were part of her care and treatment. Parts of those care and treatment can be withdrawn at any time as the master of her complaint, as the person who can withdraw them if she chooses. The affidavit of Dr. Denver is verbatim what Rita warns against, which is the mental health of another party cannot be introduced by the opposing party. He has attempted. What are you claiming for damages in terms of your complaint? What is your language in the complaint? Are you limited to pain and suffering? Well, if I withdraw these mental health… If. No. If. I'm arguing you have. And you just said if. What's that? You withdraw. If. No, I have withdrawn them. And they're still withdrawn. Then why use the word if? What's that? Then why did you use the word if? I'm sorry, I don't. You just said, if I withdraw. But the premise of your argument earlier was, I have withdrawn. I have withdrawn. Absolutely. There is no waiver on that. Back to Justice Wright's question. What are you claiming? What exists in the complaint right now that you're claiming for damages? The damages that exist… Right now. Right now. Injuries to her leg, injuries to her arm, the physical injuries from the accident, which includes a traumatic brain injury, the cognitive issues related to that physical brain injury, which include… Memory loss. I'm sorry, memory loss and the inability to multitask. And then ordinary pain and suffering. Essentially, the pain and where it was to have to go through all of this. That is the only pain and suffering, and that is what Rita says is absolutely okay. That is not a psychotherapeutic issue. So that is what remains. Back to Dr. Denver. They cannot have their own theory of the case that makes it relevant. Rita was very specific on that. And the idea that Rita didn't waive it because none of the depositions went forward, that's because the discovery issue came to a head immediately after the plaintiff's deposition. So in that way, structurally, it was different in where it came up. So as soon as the plaintiff's deposition was done, that issue was taken up. Thank you. So I will take their affidavit with a grain of salt and put it where Rita says to put it, which is if every time you have an issue like this, one side just hires an expert, it will eviscerate the exception in paragraph one will eviscerate the privilege in its entirety. The defense will always say, well, they're kind of interrelated, so it all comes in. And I get to see if she had a horrible experience when she was 16 years old 30 years ago, no matter how personal and private it was. And that goes against the public policy of the statute itself. Thank you. Any other questions? Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, we'll take a recess for panel change.